## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

**KAAMILAH GILYARD,** *et al.***,**

                **PLAINTIFFS,**

    v.                                    **CIVIL ACTION NO.: 2:05CV27**

**NORTHLAKE FOODS, INC.**

and

**WAFFLE HOUSE, INC.,**

                **DEFENDANTS.**

### ORDER

This matter came before the Court on the motion of Defendant Northlake to Dismiss the Complaint or, in the alternative, to Dismiss and Strike Portions of the Complaint (Doc. 5) and the motion of Plaintiffs for an Enlargement of Time to File a Response to Defendant's Motion (Doc. 9). On March 31, 2005, the Court heard the motions and ruled from the bench, denying the relief and alternative relief requested by Defendant Northlake and granting the relief requested by Plaintiffs. This order further explains the Court's rulings.

### I.  Background and Procedural History:

Plaintiffs filed a complaint alleging that they received discriminatory service on the basis of race at the Western Branch Waffle House, in violation of 42 U.S.C. § 1981. Compl. at ¶ 2.

1

Plaintiffs allege that they were not greeted and seated in the same manner as other patrons, that they were served fly-infested food, that payment was demanded for the uneaten, inedible food, and that the police were called in an effort to force payment. Compl. at ¶ 3.

Northlake Foods, Inc. [hereinafter Northlake] is a franchisee of Waffle House, Inc. and operates the Western Branch Waffle House. Compl. at ¶ 11. Northlake moved to dismiss Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 5.) Northlake served its Motion to Dismiss on Plaintiffs by mail on February 11, 2005. (Doc. 14.) On February 28, 2005, Plaintiffs moved to enlarge the time for them to file a responsive brief from February 25, 2005, a Friday, to February 28, 2005, a Monday. (Doc. 9.) Subject to the Court's determination of their request for an enlargement, Plaintiffs tendered a Memorandum in Opposition to Defendant's Motion. (Doc. 11.) The Court resolved Plaintiff's motion first and included their memorandum in the Court's consideration of the motion to dismiss.

## II. Motions:

**A. Plaintiffs' Motion for an Extension of Time:**

STANDARD

"Unless otherwise directed by the Court, [an] opposing party shall file a responsive brief and such supporting documents as are appropriate, within eleven (11) days after service. . . ." E.D.V.A. LOCAL R. CIV. P. 7(E). In computing a period of time allowed by the local rules of a district court, "the day of the act, event, or default from which the designated period of time begins to run shall not be included." FED. R. CIV. P. 6(a). Unless the last day is a weekend or legal holiday, it shall be counted. Id. A court may, for good cause shown, enlarge the period of

time in which an action is to occur. Id. at (b). Requests for extensions or enlargements of time must be in writing and, if made after the period of time in which an act was to occur, must be accompanied by a brief. Local Rule 7(E) and (H). Such requests are looked upon with disfavor and may only be granted if the failure to act was the result of excusable neglect. Rule 6(b); Local Rule 7(H).

<u>ANALYSIS OF MOTION</u>

Northlake served its motion on Plaintiffs on February 11, 2005. (Doc. 14.) Under Rule 6(a), Plaintiffs had until February 22, 2005, to file a responsive brief. Because service was made by mail, however, Rule 6(e) adds three days to that date. Plaintiffs' adjusted deadline was Friday, February 25, 2005. Plaintiffs did not submit a response by this date.

On Monday, February 28, 2005, Plaintiffs filed a motion for an extension of time. (Doc. 9.) Because this filing was made after the time period for response had expired, Plaintiffs included an accompanying brief as required in Local Rule 7E(2). (Doc. 10.) In their brief, Plaintiffs' counsel indicates that he miscalculated the number of days for response because he failed to count Washington's Birthday, February 21, 2005, as one of the eleven days. Rule 6(a) does provide that "when the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Washington's Birthday is a legal holiday as defined by the rule. Id. Because Plaintiffs had eleven days to respond, however, intermediate weekends and legal holidays are not excluded. Plaintiffs' counsel appropriately included intermediate weekends in his calculation, but mistakenly excluded Washington's Birthday.

Under Rule 6(b), where the specified period for the performance of an act has elapsed, a

district court may enlarge the period and permit the tardy act where the omission is the "result of excusable neglect." Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship., 507 U.S. 380, 391 (1993). The Court of Appeals for the Fourth Circuit reviews a district court's ruling on excusable neglect for an abuse of discretion. United States v Borromeo, 945 F.2d 750, 754 (4th Cir. 1991).

Plaintiffs ask the Court to consider this excusable neglect. They cite to Pioneer in support of their motion. In that case the Supreme Court noted that "excusable neglect" under Rule 6(b) is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant. Id. at 392. The Court also concluded that

> the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . .the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Id. at 395.

Northlake urges strict application of the rules and exclusion of Plaintiffs' response. For this treatment, Northlake cites to Shaw Envtl., Inc. v. Gulf Ins. Co., 225 F.R.D. 526, 529 (E.D.V.A. Jan 14, 2005), a case in which a motion for enlargement of time was denied. In that case, the plaintiff failed to effectuate service within 120 days. The Shaw plaintiff mailed a waiver of service by summons to the purported defendant, but did so without allowing sufficient time for a response prior to the service deadline. That plaintiff claimed to have misunderstood the relationship of Rule 4(d) to Rule 4(c) and (m). Northlake also directs the Court's attention to the general rule concerning the "excusability" of neglect: inadvertence, ignorance of the rules, or mistakes construing the rules do not pass muster. Pioneer, 507 U.S. at 392. Shaw can be distinguished, however, because those plaintiffs did not bring the matter to the court's attention

until fourteen days after the deadline had passed, whereas Plaintiffs moved for an enlargement and were ready to file on the next business day.

Ultimately, Pioneer stands not for a rule, but for an equitable weighing of factors. And those factors support granting the motion in this case. Northlake was not and should not have been prejudiced by receiving the opposition three calendar days late. The length of the delay was minimal and did not affect judicial processing. Furthermore, Plaintiffs acted in good faith, with Plaintiffs' counsel submitting his motion for an enlargement and the responsive brief on the next business day. The only factor which undermines Plaintiffs' motion is that the delay was fully within their control. To allow this factor to triumph under these circumstances would divorce "excusable" from "neglect." Before a person can be negligent, the ability to do the act must have been within their control. For "excusable" to have meaning, there must be a circumstance where failure to do that which was within ones control is later allowed by a court. Finding that this is such a circumstance, the Court GRANTS Plaintiffs' Motion for an Enlargement of Time to File a Response.

**B. Northlake's Motion to Dismiss Plaintiffs' Complaint in its Entirety:**

FACTUAL BACKGROUND AS ALLEGED IN THE COMPLAINT[1]

The five plaintiffs are members of racial or ethnic minorities. Compl. at ¶¶ 6-10.

Plaintiffs were not greeted when they entered the restaurant. Nobody offered them a seat. Plaintiffs stood by an empty table large enough to accommodate five people, [sic] and waited for somebody to clear the table and seat them. After a protracted wait, a white waitress who later identified herself as "Sheryl" walked past Plaintiffs. She told them they could not sit at the empty five-person table. At the time, the restaurant had only about four other parties seated, and there was no apparent reason why the Plaintiffs should not have been able to sit at the empty

---

[1]This opinion views the facts in the light most favorable to the Plaintiff, and all factual findings are for the limited purpose of determination of the motion to dismiss.

table. Plaintiffs partially cleared the table and seated themselves there anyway. Compl. at ¶ 15.

All customers present were white, with the exception of Plaintiffs and one other couple. Compl. at ¶ 16.

After bringing side dishes of waffles to the table, the waitress brought Plaintiff Amina Gilyard her meal. Compl. at ¶ 18.

When the food was placed in front of Plaintiff Amina Gilyard, it was immediately apparent that there were flies or pieces of flies cooked into the grits. The flies were large, black, mixed into the white grits, and obviously visible. Anybody merely glancing at the dish would have immediately noticed the flies. All the Plaintiffs saw them and were horrified. Compl. at ¶ 19.

Plaintiffs instantly notified the waitress that there were flies in their food. The waitress took the plate of grits back to the kitchen saying that she would replace the grits. Plaintiffs could not understand how so many flies could have been "accidentally" cooked into the food, nor could they understand how both the cook and the waitress failed to notice such an obvious and disgusting infestation. Plaintiffs concluded that the flies were most likely intentionally cooked into the food. Neither the waitress nor the cook came to the table to apologize or explain what happened. Compl. at ¶ 20.

The waitress would not assure Plaintiffs that their other orders would be safe and clean. She did not indicate that the "replacement" grits would be drawn from anyplace other than the same pot from which the adulterated grits came. . . . Plaintiffs told the waitress to cancel their remaining orders. Compl. at ¶ 21.

The waitress proceeded loudly and belligerently to yell at the Plaintiffs, stating that they were "not going to walk out on this bill." Plaintiffs assured the waitress they intended to pay for the one glass of orange juice. Rather than simply honoring Plaintiffs' request, the waitress hurriedly tried to deliver the already cancelled orders to the table. Compl. at ¶ 22.

The waitress angrily threatened that she was going to call the police. . . . The waitress handed Plaintiffs a bill for approximately $50, despite the fact that none of the food placed on the table had been touched. The waitress also told several patrons that Plaintiffs were trying to "walk out on a bill." The patrons in the restaurant stared at Plaintiffs, causing embarrassment and humiliation. Compl. at ¶ 23.

Plaintiffs describe the involvement of the police in ¶¶ 25-29 of their complaint. They allege that the police were called, that first one and then another arrived, that Plaintiffs were originally told by the police that they would have to pay the bill, but, that after the Police consulted with a magistrate, they told Plaintiffs that they would not have to pay and could leave. Id.

A policeman got Plaintiffs the Waffle House Manager's direct number, so that they could make a complaint.  Compl. at ¶ 30.

Plaintiffs were humiliated and exhausted after their ordeal at the waffle house.  Compl. at ¶¶ 32-33.  Plaintiffs were delayed in their travel.  Id.

Plaintiff Amina Gilyard called the manager of the Waffle House the following week.  The manager described the incident as a misunderstanding and offered Plaintiff Amina Gilyard a free meal to compensate her for the inappropriate behavior.  Nothing was offered to the other Plaintiffs, nor were Plaintiffs made aware of any discipline that was taken towards the employees.  Compl. at ¶ 34.

## STATUTE

42 U.S.C. § 1981 is titled, "Equal rights under the law."  It provides:

(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

## STANDARD

Northlake moves to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.  Under FED. R. CIV. P. 12(b)(6), a litigant is entitled to have his complaint construed liberally.  Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).  Facts in the complaint, as well as inferences drawn therefrom, should be construed in a light most favorable to the nonmoving party.  Sutton v. United Air Lines, Inc., 527 U.S. 471, 475 (1999).  Dismissal is

proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Terry v. Bobb, 827 F. Supp. 366, 367 (E.D. Va. 1993); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In the § 1981 context, "a plaintiff need only allege facts sufficient to state a claim regarding its prima facie case" to survive a motion to dismiss. Bethea v. Michael's Family Restaurant and Diner, 2001 U.S. Dist LEXIS 8655 *6 (E.D. Pa. 2001) (citing Bobbitt by Bobbitt v. Rage, Inc., 19 F.Supp 2d. 512, 516 (D.N.C. 1998)).

### ANALYSIS OF MOTION

Section 1981 grants all persons within the jurisdiction of the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981 (a). When a plaintiff cannot introduce direct evidence that his rights were denied by intentional discrimination, he must proffer circumstantial evidence to satisfy the *McDonnell Douglas* analytical framework. Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004). Under that framework, a plaintiff "must first establish a prima facie case of discrimination, the defendant may respond by producing evidence that it acted with a legitimate, nondiscriminatory reason, and then the plaintiff may adduce evidence showing that the defendant's proffered reason was mere pretext and that race was the real reason for the defendant's less favorable treatment of the plaintiff." Id. (citing Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000)).

1. The Elements of the *Prima Facie* Case

In its motion, Northlake asserts that to establish a *prima facie* case for denial of the right to contract under 42 U.S.C. § 1981, a plaintiff must prove that: (1) she is a member of a protected class; (2) she attempted to contract for certain services; (3) she was denied the right to contract

8

for services; and (4) the services remained available to those outside the protected class. Northlake cites to Wilkins v. Denamerica Corp., 2000 U.S. Dist. LEXIS 21308, *16-17 (W.D.N.C. Apr. 6, 2000)(citing White v. Denny's Inc., 918 F. Supp. 1418, 1423 (D. Colo. 1996), for this construction.

However, in Williams v. Staples, Inc., 372 F.3d at 667, the Fourth Circuit established the elements of a *prima face* case of discrimination in a § 1981 cause of action relating to the purchase of goods or services. Plaintiffs recognize Williams v. Staples in their memorandum, but ask the Court to use the *prima facie* construction for public accommodations cases developed in Callwood, *et al*., v. Dave & Buster's, Inc., 98 F.Supp 2d. 694 (D.Md. June 7, 2000). Under Callwood, a plaintiff must establish that:

> (1) they are members of a protected class;
> (2) they made themselves available to receive and pay for services ordinarily provided by the defendant to all members of the public in the manner in which they are ordinarily provided; and
> (3) they did not enjoy the privileges and benefits of the contracted for experience under factual circumstances which rationally support an inference of unlawful discrimination in that (a) they were deprived of services while similarly situated persons outside the protected class were not deprived of those services, and/or (b) they received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable.

Id.

In addition to being binding precedent as a published Fourth Circuit opinion, Williams v. Staples is also more recent than the cases cited by Northlake and Plaintiffs. Furthermore, although Callwood has been followed by the Second Circuit in Lizardo v. Denny's, Inc., 270 F.3d 94 (2001) and the Sixth Circuit in Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 872 (2001), the Fourth Circuit specifically declined to adopt it, noting instead that "Callwood purports to provide an alternative analytical approach in public accommodation discrimination

cases in which there is scant evidence as to how members of the protected class are treated differently from members outside the class." The Court sees no need to resort to an alternative approach and elects to utilize the Williams v. Staples elements of the *prima facie* case. To prevail then, Plaintiffs must establish that:

> (1) they are a member of a protected class;
> (2) they sought to enter into a contractual relationship with the defendant;
> (3) they met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and
> (4) they were denied the opportunity to contract for goods or services that was otherwise afforded to white customers.

372 F.3d at 667.

2. Whether Plaintiffs' Complaint establishes a prima facie case

It is undisputed that Plaintiffs' complaint satisfies the first two elements of the Williams v. Staples construction. The five plaintiffs are members of racial or ethnic minorities (Compl. at ¶¶ 6-10) and they sought to enter into contracts for services with Northlake (Compl. at ¶ 15). What Northlake argues is that Plaintiffs cannot maintain a 42 U.S.C. § 1981 claim for denial of the right to contract because their facts establish that they were not denied the ability to contract, i.e. they were served. In support of its position, Northlake refers to White v. Denny's Inc., 918 F. Supp. 1418, 1423 (D. Colo. 1996) (where right to contract has not been denied, *prima facie* case cannot be satisfied). Plaintiff's acknowledge that they received service, but deny it is fatal to their claim. Plaintiffs suggest that Northlake's characterization of the contract as one for service (a contract that was fulfilled when the waitress served Plaintiffs) ignores that portion of 42 U.S.C. § 1981(b) which provides for "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

10

Williams v. Staples elements three and four refer to "services ordinarily provided" and services "that [were] otherwise afforded to white customers" in general terms. In a given case, it is up to the court to determine precisely what services are at issue. Here, Plaintiffs allege that they sought to contract for edible food and that they were denied the right to make that contract. The court in Charity v. Denny's Inc., 1999 U.S. Dist. LEXIS 11462 * 10 (E.D. La. 1999), found that restaurant contracts are for more than food, they are for a dining experience commensurate with the quality of the establishment attended. District court cases within the Fourth Circuit have cited Charity with approval. See Wilkins, 2000 U.S. Dist. LEXIS at *8; Callwood, 98 F. Supp 2d. at 694. Although none of the district court cases are precedent, the Court finds them helpful and persuasive in its effort to define the services for which a restaurantgoer contracts. The Court finds that the restaurant services involved in this case include Northlake's willingness to seat Plaintiffs, to take their order, and to fill it with edible food.

Notwithstanding the Court's finding, Northlake argues that Plaintiffs' complaint is still insufficient. First, Northlake contends that Plaintiffs did not allege that other customers were treated better than they were. However, the Court finds that it is reasonable to infer from the continued presence of other customers that they did not receive grits or other food in the fly-infested condition alleged by Plaintiffs. Second, Northlake submits that Plaintiffs' complaint cannot be taken at face value because the description of the grits is illogical. In order to be true, Northlake hypothesizes that Plaintiffs' complaint would require the restaurant to serve either "magic grits," which are infested when brought to some tables and not when brought to others, or to have a "fly-pot," from which only certain orders are filled. But in determining Northlake's motion to dismiss, the Court must view the facts in the light most favorable to the Plaintiff.

11

Doing so, the Court accepts Plaintiffs' description of flies "mixed into the white grits, and obviously visible." Compl. at ¶ 19. Should Plaintiffs be able to prove this and their other allegations, they may be entitled to relief.

Even so, in their reply and in oral argument, Northlake suggests that only Amina Gilyard, the Plaintiff served the fly-infested grits, would have standing to bring a 42 U.S.C. § 1981(a) claim. Northlake reasons that the other four Plaintiffs lack standing because each was served an edible side dish. The Court disagrees. The other Plaintiffs were not mere bystanders to the deprivation of Amina Gilyard's rights. Ignoring the facts that one of the Plaintiffs is Amina's sister, and that two of the other Plaintiffs are also brother and sister, it is undeniable that unrelated white people enjoy the opportunity to go to a restaurant as a group, to be seated, to have their orders taken and to be filled with edible food. This assessment of the American dining experience is strengthened by the fact that Plaintiffs were presented with one - not five - bills by the Western Branch Waffle House. Compl. at ¶ 23. Thus, if Northlake intentionally discriminated against one member of this group, it would be a reasonable inference that Northlake discriminated against the whole group. Northlake's motion to dismiss the complaint in its entirety is DENIED.

**C. Northlake's Motion to Dismiss Plaintiffs' Complaint in Part:**

1. Whether Plaintiffs' Complaint States a Claim Based on the Waitress Calling the Police

To the extent Plaintiffs meant their allegations to assert a claim regarding Northlake calling the police, Northlake moves the Court to dismiss such claim. Northlake cites Pittman v. City of Rocky Mount, 1996 U.S. Dist. LEXIS 10724, *6 (E.D.N.C. June 25, 1996), for the proposition that calling the police, or even detaining someone, does not implicate any of the

rights protected under 42 U.S.C. § 1981.  In their memorandum and in oral argument, however, Plaintiffs deny that they made an independent claim based on the wait staff calling the police. Based upon the position taken by Plaintiffs, the Court finds that police involvement cannot form the basis for an independent claim and will not be a separate basis of recovery.  There being no claim to dismiss, Northlake's motion is DENIED.

2.  Whether Plaintiffs' Complaint States a Claim Based on a Pattern and Practice of Discrimination by Northlake

Plaintiffs' allege that "Defendant Northlake engages in a pattern and practice of discriminating against African-Americans and other minority persons in the provision of food and services."  Compl. at ¶ 49.  Northlake argues that Plaintiffs cannot maintain a pattern and practice claim in a non-class action and that Plaintiffs' claim should be dismissed for failure to state a claim upon which relief may be granted.  "Pattern or practice discrimination" is a term of art used to refer to an analytical framework of proving discrimination that is different from the *McDonnell Douglas* framework.   Regardless of whether the claim is spearheaded by the government or private persons, the pattern or practice framework is used exclusively for class actions.  Once the pattern or practice is proven, an assumption arises that each member of the class was discriminated against.

Northlake cites to Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 758-759 (4th Cir. 1998), vacated on other grounds, 527 U.S. 1031 (1999), for the proposition that "individuals do not have a private, non-class cause of action for pattern or practice discrimination under § 1981. . . ."  But the Fourth Circuit in Lowery also held that "such plaintiffs may use evidence of a pattern or practice of discrimination to help prove claims of individual discrimination within the

13

*McDonnell Douglas* framework. . . ." Id. The court even illustrated how pattern and practice evidence could be helpful. "Evidence of a pattern or practice of discrimination may very well be useful and relevant to prove the fourth element of a prima facie case, that the individual's adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination, or that the employer's articulated reasons for the adverse action was merely pretext, or to establish the plaintiff's ultimate burden. Id. (internal citations omitted).

In their memorandum and in oral argument, Plaintiffs assert that they do not make a claim based on a pattern and practice cause of action. Plaintiffs insist that they will only use pattern and practice evidence for the purpose allowed in Lowery.[2] If otherwise admissible, the Court will allow Plaintiffs to present pattern and practice evidence. But such evidence will not form the basis for an independent claim and will not be a separate basis of recovery. It being clear to the Court that Plaintiffs do not assert an independent pattern and practice claim, Northlake's motion is DENIED.

**D. Northlake's Motion to Strike:**

Pursuant to FED. R. CIV. P. 12(f), Northlake moves to strike Plaintiffs' allegation that "Northlake engages in a pattern and practice of discriminating against African-Americans and other minority persons in the provision of food and services." As authority for the relief they seek, Northlake argued that Waste Management Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) stands for the proposition that, although disfavored, Rule 12(f) may be used to

---

[2]On March 9, 2005, without obtaining leave of the Court, Plaintiffs tendered further authority in support of their position on the admissibility of pattern and practice evidence. Local Rule 7(F) provides, "no further briefs or written communications may be filed without first obtaining leave of the Court." The Court did not allow Plaintiffs to file the additional authority offered.

strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although immateriality and impertinence are mentioned, Northlake's brief in support of its motion alludes to irrelevance and prejudice. Specifically, Northlake contends that the evidence serves no valid purpose and merely "portray[s] Northlake unfavorably." (Def.'s Mem. in Supp. Mot. at p. 11.) Under Lowery, however, it is clear that pattern and practice evidence can be relevant.

Without conceding the general relevance of pattern and practice evidence, Northlake also suggests that Plaintiffs have insufficient proof of a pattern and practice because the complaint discusses only one incident. Within the context of the motion to strike, Northlake characterizes ¶ 49 as an unproven allegation designed to besmirch Northlake. But Attachments 1-3 to the Plaintiffs's Memorandum in Opposition to the Motion to Strike describe other incidents through which Plaintiffs hope to establish a pattern and practice. Northlake's motion to strike is premature, as the Court will not resolve the issues of admissibility of such evidence, one way or another, at this time.

## CONCLUSION

For the reasons stated from the Bench and in this Order, the Court **DENIES** the motion of Defendant Northlake to Dismiss the Complaint in its Entirety, **DENIES** the motion to Dismiss the Complaint in Part, **DENIES** the motion to Strike Portions of the Complaint, and **GRANTS** the motion of Plaintiffs for an Enlargement of Time to File a Response.

  The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

  It is so **ORDERED**.

/s/

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 13th, 2005